THE LARIMER AND WELD RESERVOIR COMPANY v. THE WATER SUPPLY AND STORAGE COMPANY.

EQUITY—PARTIES—WATER RIGHTS.

A reservoir company taking water for storage from a tributary is not liable to be enjoined from so doing at the suit of an appropriator of water from the main stream above the mouth of the tributary. The rights of appropriators below cannot be determined except in a proceeding to which they are parties.

*Error to the District Court of Larimer County.*

Messrs. ROBINSON & LOVE and Mr. H. N. HAYNES, for plaintiff in error.

Mr. GEO. W. BAILEY and Mr. H. I. GARBUTT, for defendant in error.

THOMSON, J., delivered the opinion of the court.

The Water Supply and Storage Company is a corporation organized to supply water for irrigation to its stockholders, taking water for that purpose from the Cache la Poudre river. The Larimer and Weld Reservoir Company is a corporation organized to furnish water for irrigation to its stockholders, and has been doing so by means of a reservoir which it filled from Dry creek, an affluent of the Cache la Poudre. The Storage Company takes its water from the Cache la Poudre above the point where Dry creek joins it. The Storage Company brought this action to restrain and enjoin the Reservoir Company from continuing to divert the waters of Dry creek during the times when water was needed by the plaintiff for the use of its stockholders, alleging that the plaintiff's appropriation preceded and was superior to that of the defendant, and that the defendant was diverting, and threatened to continue to divert, the waters of Dry creek, to the diminution of the amount to which the plaintiff was entitled,

and to the irreparable injury of its stockholders, by reason' of the failure and ruin of their crops which would be caused by an insufficient supply of water. A decree was rendered according to the prayer of the complaint, and the defendant brings the case here.

The defendant pleaded a former judgment in its favor in a case brought by it, as plaintiff, against the plaintiff in this case, as defendant; and it is maintained on one side, and denied on the other, that this judgment is conclusive of the question of priority of appropriation as between the Storage Company and the Reservoir Company. Upon an examination of the record, we find that the case will be disposed of before the question of the effect of that judgment is reached, and nothing of value will be gained by discussing it. It may therefore be dismissed from consideration.

The defendant's appropriation is from Dry creek, and the plaintiff's from the Cache la Poudre, above the point of junction of the two streams. That the diversion of the waters of Dry creek by the defendant should result in any direct injury to the plaintiff is therefore a physical impossibility. Dry creek has no connection whatever with the source of the plaintiff's supply; and no appropriation from it could affect in any way the amount of water which might flow from the Cache la Poudre into the plaintiff's ditch. Therefore, if the plaintiff was in danger of losing a portion of the water to which it was entitled, the danger must have arisen out of some facts beyond the mere tapping of Dry creek. No such facts appear in the record. The statements of the complaint are confined to the priority of the plaintiff's appropriation over that of the defendant, the threatened diversion by the defendant, and the consequent injury to the plaintiff. In what manner the injury could possibly arise is not stated. There was a demurrer to the complaint, which, instead of being sustained, as it should have been, was overruled. The hearing was had, partly upon an agreed statement, and partly upon evidence. But neither in the statement nor the evidence were the facts, absent from the

complaint, but essential to the plaintiff's right to relief, supplied.

The argument of plaintiff's counsel amounts to this : That as the defendant's taking of the water will diminish the quantity to which the appropriators from the Cache la Poudre below the mouth of Dry creek, whose appropriations are senior to those of the plaintiff and defendant, are entitled, and as those appropriators could compel the plaintiff to make good their deficiency out of its own appropriation, therefore it can compel the defendant to desist from taking from Dry creek water which would otherwise flow into the Cache la Poudre and go to the benefit of the senior appropriators. Counsel say : " Suppose, for the purpose of illustration, that the stream and its tributaries carry 1,000 cubic feet of water, which is all appropriated by the owners of various ditches along the line of the stream.   The junior appropriator, with an appropriation of 100 feet, is up the river, and below the headgate of the junior appropriator is a tributary carrying 100 feet.   So long as this 100 feet is permitted to flow into the stream it goes to supply the senior appropriator, the head of whose ditch is below the mouth of the tributary, and the junior appropriator is at liberty to take 100 feet of the waters flowing down the main stream ; but, permit another to divert the water from the tributary, and the senior appropriator immediately has recourse to the water in the main stream, and the loss falls directly upon the junior appropriator, it being immaterial whether his headgate is above or below the mouth of the tributary."

One trouble with this argument is that there is no foundation of fact for it to rest upon.   It nowhere appears that there were any senior appropriators below the mouth of Dry creek. The complaint says that the plaintiff's appropriation was No. 100.   There were then ninety-nine appropriations ahead of it ; but, for aught that is shown, none of them was located where its supply would have been at all interfered with by the threatened acts of the defendant.   Neither was it alleged that the water flowing in the Cache la Poudre was not amply

sufficient for all appropriators, senior and junior, after deducting the amount which the defendant proposed to withdraw from Dry creek; or that by reason of the threatened diversion any person would suffer any loss of supply. As long as there is water sufficient for the demands of every person interested, there is and can be no cause of complaint.

But if the facts, which the argument assumes, had been alleged and proved, the argument would nevertheless have been without foundation in law. Even if it had clearly appeared that there were appropriators upon the Cache la Poudre below the mouth of Dry creek, whose rights were superior and paramount to those of the plaintiff, and that the diversion by the defendant would result in depriving them of water which they needed, and to which they were entitled, there would still be no right of action in the plaintiff. It is true that where the water supply of the first appropriators falls short, the loss must ultimately be borne by those whose appropriations were made last. These will not be permitted to continue the use of water which those below are entitled to, and of which that use deprives them. But the question whether there is or would be a deprivation cannot be judicially determined in a proceeding to which the persons who would receive the water, if it were not taken from the stream at a point above them, are not parties. The plaintiff, the diversion of whose water by the defendant's tapping of Dry creek was impossible, could not call the defendant to account, even if the senior appropriators below were complaining, because the defendant has the right to a trial and determination of the question whether in fact its proposed acts would impair their rights; and such trial and determination cannot be had except in a proceeding in which relief is sought in their behalf.

Not only is this complaint utterly insufficient, but the undisputed facts are conclusive that direct injury to the plaintiff from robbing Dry creek of its water is impossible, and no indirect injury is alleged or shown.

The judgment will be reversed.

*Reversed.*